UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHRISTHIAN DIAZ, on behalf of himself and all
others similarly situated,

                Plaintiff,

-against-

LOBEL'S OF NEW YORK, LLC,

                Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-6349 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Christhian Diaz brings this putative class action against Defendant Lobel's of New York, LLC ("Lobel's") alleging that its website is inaccessible to blind customers in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Currently pending before this court are the Defendant's motion to dismiss or in the alternative for summary judgment and Plaintiff's motion for summary judgment. (See Def. Mot. to Dismiss or for Summ. J. ("Def. Mot.") (Dkt. 37); Pl. Mot. for Summ. J. ("Pl. Mot.") (Dkt. 47).) For the following reasons, the court DENIES both parties' motions.

I.     **BACKGROUND**

    A.     **Factual Background**

The following statement of facts is largely taken from the parties' Local Rule 56.1 statements and declarations, with the evidence "constru[ed] . . . in the light most favorable to the non-moving party." Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir. 2018) (internal citation and quotation marks omitted). (See Def. Statement of Material Facts ("Def. 56.1") (Dkt. 39); Pl. Resp. to Def. 56.1 ("Pl. 56.1 Resp.") (Dkt. 41); Pl. Statement of Material Facts ("Pl.

1

56.1") (Dkt. 48); Def. Resp. to Pl. 56.1 ("Def. 56.1 Resp.") (Dkt. 51).) The parties agree on the following facts, except where otherwise noted.

Plaintiff Christhian Diaz is blind and uses screen-reading software, named JAWS and NVDA, to access the internet and read website content. (Pl. 56.1 ¶ 2.) Defendant owns and operates the website www.lobels.com (the "Website"). (Def. 56.1 ¶ 1.) Defendant uses the website to market and sell more than 400 different products, including fresh meats, other food products, merchandise, and gift packages. (Id. ¶¶ 2-3.) Defendant also uses its website to post recipes and information about its business. (Id. ¶ 4.) The Website consists of nearly 1,000 separate pages. (Id. ¶¶ 5-6.)

Beginning in December 2016, Plaintiff attempted to make a purchase on the Website at least five times. (Pl. 56.1 ¶ 3.) Plaintiff could not purchase products on the Website using JAWS or NVDA because the website was not accessible via keyboard access. (Id. ¶ 4.)

Website Updates[1]

Defendant states that as of the date of its motion—December 22, 2017—it had "recently completed" an update of the Website to make it conform with guidelines regarding accessibility for visually impaired persons. (Def. 56.1 ¶ 8.) Defendant began updating its website in the spring of 2017 using a "comprehensive plan" to improve accessibility. (Def. 56.1 ¶¶ 9-10.) Defendant's updates were guided by the Web Content Accessibility Guidelines ("WCAG") 2.0

---

[1] In response to each of the statements in this section concerning the steps Defendant undertook to render the Website compliant, Plaintiff reasserts that the Website was not fully accessible in September 2017, November 2017, or January 2018. The fact that the update was not completed by those dates does not, however, controvert the specifics of Defendant's plan and efforts to update the Website in conformance with the WCAG 2.0 Level AA standard. The facts in this section are therefore deemed admitted for purposes of the Defendant's motion. See Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

2

Level AA standard.[2] (Id. ¶ 10.) Both parties agree that the WCAG 2.0 Level A and AA standards are the appropriate guidelines to satisfy the ADA's accessibility requirement. (Pl. 56.1 ¶ 9; Def. 56.1 Resp. ¶ 9.) Defendant's plan included purchasing a subscription to a website auditing service and then making changes to the code contained in the website based upon the service's findings to make it conform to the WCAG 2.0 Level AA guidelines. (Id. ¶¶ 11-12.) As part of the update, Defendant re-coded the Website by, among other things, including labels in specific code so that images and functions on the website could be described auditorily; stripping out code that interfered with screen readers; adding page heading tags to enable a person using a screen reader to navigate consistently from page-to-page. (Id. ¶ 13.) This work was performed by employees of Defendant as well as its contracted web developers. (Id. ¶ 14.) Defendant used a diagnostic tool obtained through a vendor, Siteimprove, Inc., which scanned the Website for accessibility issues. (Id. ¶ 15.)

Website Status

Defendant contends that as of the date of the 56.1 statement, the Website was in conformance with WCAG 2.0 Level AA standard. (Id. ¶ 16.) In addition, Defendant promised to remedy within five business days "a few minor exceptions" that were revealed by the Siteimprove scan performed on December 22, 2017. (Id. ¶ 17.) Plaintiff counters that the Website was still "not accessible" to blind individuals as of January 17, 2018. (Pl. 56.1 Resp. ¶¶ 17.) Defendant added an ADA policy with a feedback form to their website, but Plaintiff stated

---

[2] "WCAG 2.0" refers to version 2.0 of the Web Content Accessibility Guidelines, which were developed by the Accessibility Guidelines Working Group of the World Wide Web Consortium, the main international standards organization for the World Wide Web." Wu v. Jensen-Lewis Co., 345 F. Supp. 3d 438, 441 (S.D.N.Y. 2018) (citing Web Content Accessibility Guidelines (WCAG) 2.0, W3C (Oct. 22, 2018, 5:46 PM), https://www.w3.org/TR/WCAG20/). "WCAG 2.0 prescribes 'a wide range of recommendations for making Web content more accessible' to 'people with disabilities, including blindness and low vision.'" Id. (citing Web Content Accessibility Guidelines (WCAG) 2.0).

that he could not read that policy using screen-reading software. (Def. 56.1 ¶¶ 18-19; Pl. 56.1 Resp. ¶¶ 18-19.)

Plaintiff also states that as of November 13, 2017, the Website is inaccessible via keyboard and contains fourteen WCAG 2.0 Level A failures and five Level AA failures, which prevent blind individuals from making a purchase on the Website. (Pl. 56.1 ¶ 11; see id. ¶¶ 12-16.) Defendant disagrees and contends that the declaration submitted by Plaintiff in support of these assertions is unreliable, and that the website was accessible by keyboard as of December 22, 2017. (Def. 56.1 Resp. ¶¶ 11-12.)

Defendant's Intentions[3]

Defendant entered into a subscription agreement with Siteimprove, Inc. and Defendant's employees will run scans of the Website at least monthly using the WCAG 2.0 Level AA standard to detect any accessibility issues. (Id. ¶¶ 20-22.) Defendant will "promptly rectify" any issues revealed by those scans. (Id. ¶¶ 23.) Defendant also commits to checking that any new content added to the Website is also in conformance. (Id. ¶ 25.)

B. Procedural History

Plaintiff filed this action on November 15, 2016, alleging violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., New York State Human Rights Law, N.Y. Exec. L. § 292 et seq., New York State Civil rights Law, N.Y. Civ. R § 40 et seq., and New York City Human Rights Law, N.Y.C. Admin. Code § 8-102 et seq. (Compl. ¶¶ 53-108.) As relief under the

---

[3] In response to each of the statements in this section concerning future commitments, Plaintiff reasserts that the Website was not fully accessible in September 2017, November 2017, or January 2018. The fact that certain accessibility issues still existed in January 2018 does not controvert Defendant's intention to regularly review and address any accessibility problems. The facts in this section are therefore deemed admitted for purposes of the Defendant's motion. See Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

4

ADA, the complaint sought injunctive relief and attorneys' fees. (Id. ¶¶ [].) In separate claims under state and local laws, the complaint also sought compensatory damages. (Id. ¶¶ [].)

The parties' respective motions to dismiss and for summary judgment were fully briefed on March 5, 2018. Defendant argues that Plaintiff's claim under the ADA is moot, because Defendant has voluntarily remedied the accessibility barriers of the Website so that it is now accessible to blind users according to the standards commonly used to assess such accessibility. (See Def. Mem. in Supp. of Mot. to Dismiss or for Summary J. ("Def. Mem.") at 6-10.) In contrast, Plaintiff asks the court to grant summary judgment in his favor because, he argues, the Website is not accessible to blind users, in violation of the ADA. (See Pl. Mem. (Dkt. 49).)

## II. STANDARDS OF REVIEW

Before the Court are Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or in the alternative for summary judgment pursuant to Rule 56, and Plaintiff's motion for summary judgment pursuant to Rule 56. The following standards of review are applicable to the respective motions.

### A. Subject Matter Jurisdiction

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Because "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" "an actual controversy must be extant at all stages of review." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013) (citation omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. at 72 (citation and quotation omitted).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011) (citing Makarova, 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (citation and quotation omitted), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); see also Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011); APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. See Makarova, 201 F.3d at 113. In so doing, the court is guided by the body of decisional law that has developed under Rule 56 of the Federal Rules of Civil Procedure. See Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986) ("While a 12(b)(1) motion cannot be converted into a Rule 56 motion, Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings.")

B.  **Summary Judgment**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zanith Radio Corp., 475 U.S. 574, 586 (1986), and may not rely on "conclusory allegations," Twin Labs., Inc., v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). See Joseph v. N. Shore Univ. Hosp., 473 Fed. App'x 34, 36 (2d Cir. 2012) (summary order) ("Conclusory allegations, conjecture, and speculation, . . . are insufficient to create a genuine issue of fact." (quoting Shannon v. N. Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003)). Instead, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "[T]he Court 'must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008)).

### III. DISCUSSION

#### A. Defendant's Motion

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Defendant argues that Plaintiff's claim under the ADA is moot, because Defendant has

voluntarily remedied the accessibility barriers of the Website so that it is now accessible to blind users according to the standards commonly used to assess such accessibility.[4] (See Def. Mem. at 6-10.) Defendant also asks that the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. (See id. at 12-13.)

1. Applicable Law

Plaintiff brings his claim under Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . ." 42 U.S.C.A. § 12182. To state a claim under Title III of the ADA, a plaintiff must allege that (1) he is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against him by denying him a full and equal opportunity to enjoy the services defendants provide. Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008); see 42 U.S.C. § 12182(a). Discrimination under the ADA includes:

> [A] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated under these provisions by the United States Department of Justice provide that "public accommodation[s] shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

---

[4] Defendant does not raise any additional arguments in support of its motion in the alternative for summary judgment.

8

Title III of the ADA allows only for injunctive relief, not monetary damages. Brief v. Albert Einstein College of Medicine, 423 Fed. App'x 88, 90 (2d Cir. 2011) (citing Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 86 (2d Cir. 2004)). Therefore, under certain circumstances, a claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation. See Bacon v. Walgreen Co., 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (collecting cases).

"In analyzing a mootness challenge, 'factual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct.'" Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 110 (2d Cir. 2010) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000)). Accordingly, the party asserting mootness bears a "heavy burden" in meeting this standard. Friends of the Earth, 528 U.S. at 189.

The Second Circuit applies a two-part test to determine whether a defendant's voluntary cessation has rendered a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Id. (quoting Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996)); see also Gropper v. Fine Arts Housing, Inc., 12 F. Supp. 3d 664, 670 (S.D.N.Y. 2014) (evaluating mootness challenge to ADA claim).

2. Discussion

Here, Defendant argues that Plaintiff's claim under the ADA is moot because that claim challenged the accessibility of the Website to blind users and Defendant has since modified the Website to rectify the access barriers of which Plaintiff complains, and that such changes "will

9

not recur."[5] (Id. at 10.) Defendant has proffered a declaration from its Director of Marketing Communications eCommerce, Rebecca Andrysiak. (See Decl. of Rebecca Adnrysiak ("Andrysiak Decl.") (Dkt. 38).) In this declaration, dated December 22, 2017, Andrysiak explains that starting in spring 2017, Defendant undertook an upgrade process to improve accessibility of the Website. (Id. ¶ 4.) Andrysiak oversaw this upgrade process, which included purchasing a subscription to a web-auditing service and making changes to the code contained in the website based on audits. (Id. ¶¶ 4-5.) As of December 22, 2017, the date of her declaration, Andrysiak stated that the Website was in conformance with the WCAG 2.0 Level AA standard, except for "a few minor exceptions revealed on the Siteimprove scan we performed today which will be remedied within five (5) business days." (Id. ¶ 6.) The declaration does not provide further details with respect to those "minor exceptions." Andrysiak also states that Defendant intends to run scans using the auditing tool at least monthly to detect any accessibility issues in the future. (Id. ¶ 9.)

Plaintiff disputes that Defendant has remedied the alleged defects. In support of this argument, Plaintiff submits a declaration in which he avers that, as of January 17, 2018, he is still unable to access certain features of the Website or complete a purchase on the Website. (Decl. of Christhian Diaz Dated January 17, 2018 ("Jan. 2018 Diaz Decl.") (Dkt. 42-1).) Specifically, Plaintiff avers that he is unable to access the search button on the homepage via the keyboard using JAWS or NVDA; the submenu options under the "Shop" menu option are not readable by JAWS or NVDA; the price of USDA prime dry-aged boneless rib steak is not readable by JAWS or NVDA; the "Proceed to Checkout" link from the shopping cart opens a window that he cannot access using JAWS or NVDA; the blanks in the "Shipping Information" form are not read by

---

[5] Defendant does not dispute that Title III applies to websites such as the one at issue here or that Plaintiff's legal blindness meets the definition of a disability within the meaning of the ADA. (See Def. Mem. at 1.)

JAWS or NVDA; and the ADA policy on the website is not read by JAWS or NVDA. (Id. ¶¶ 9-15.) Defendant does not contest that Plaintiff is unable to access the search bar. Instead, in a declaration submitted with its reply brief, Andrysiak asserts that "even if the search icon is not accessible by keyboard, a visually impaired person using the website still has access to the webpages contained in the website." (Reply Decl. of Rebecca Andrysiak, dated January 26, 2018 ("Andrysiak Reply Decl.") (Dkt. 44) ¶ 4.)

Plaintiff also submits a declaration by Michael McCaffrey, founder of ADASure, a company that was retained by Plaintiff's counsel to perform a "compliance audit" on the Website. (Decl. of Michael McCaffrey ("McCaffrey Decl.").) Plaintiff also submits reports of those "audits," conducted in September and November 2017 and January 2018 (the "ADASure Audits"). (See ADASure Audits (Dkts. 42-2–42-6).)

As Defendant rightly notes (see Def. Mem. in Opp'n to Pl. Mot. for Summary J. ("Def. Opp'n") at 5-6), and as explained further below, Plaintiff has not yet established the expertise of ADASure or the reliability of the methods it used at the level required to support admissibility of the ADASure Audits. See Del-Orden v. Bonobos, Inc., No. 17-CV-2744 (PAE), 2017 WL 6547902, at *13 (S.D.N.Y. Dec. 20, 2017) (finding that THE plaintiff had not sufficiently established the admissibility of a similar unsworn "audit" by ADASure). The McCaffrey declaration is thus of limited use to the court. The declaration submitted by Defendant, in which Andrysiak concedes that the Website contains certain "minor exceptions" (see Andrysiak Decl. ¶ 7), and Plaintiff's own declaration, in which he avers that he cannot fully access or enjoy the Website (see Jan. 2018 Diaz Decl.), are nonetheless sufficient to rebut Defendant's contention that the ADA claim has been mooted by Defendant's upgrades.

The court cannot conclude, based on the evidence before it, that Defendant has fully rectified all access barriers in the Website or that it is "absolutely clear the [D]efendant cannot resume the allegedly offending conduct.'" Clear Channel, 594 F.3d at 110 (quoting Friends of the Earth, 528 U.S. at 189). The court thus finds that Plaintiff's ADA claim is not moot, and denies Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

As noted above, Defendant sets forth no additional arguments with respect to its motion in the alternative for summary judgment. Having found that Plaintiff's ADA claim is not moot, the court also denies Defendant's motion for summary judgment because, as discussed in further detail below, there is a triable issue as to whether the Website violates the ADA.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff asks the court to grant summary judgment in his favor because, he argues, the Website is allegedly not accessible to blind users, in violation of the ADA. (See Pl. Mem.) Plaintiff asks that the court grant injunctive relief pursuant to the ADA as well as fees and damages under state law. (Id. at 20-21.)

In support of his motion, Plaintiff submits two declarations from himself (see Jan. 2018 Diaz Decl.; Decl. of Christhian Diaz Dated December 22, 2017 ("Dec. 2017 Diaz Decl.") (Dkt. 49-1)) and a declaration from Michael McCaffrey, founder of ADASure, a company that was retained by Plaintiff's counsel to perform a "compliance audit" on the Website (see McCaffrey Decl.). Because Defendant challenges the reliability of the McCaffrey declaration and urges the court to disregard it, the court begins with a discussion of its admissibility.

1. The McCaffrey Declaration

   *a.   Legal Standard*

In deciding whether a motion for summary judgment should be granted, a district court may only consider admissible evidence. See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, [a] district court properly considers only evidence that would be admissible at trial." (citation omitted)). Thus, as the Second Circuit has explained, it is the proper role of the district court to consider the admissibility of expert testimony in determining whether summary judgment is warranted:

> Because the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law,' Fed.R.Civ.P. 56(c), it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment. Although disputes as to the validity of the underlying data go to the weight of the evidence, and are for the factfinder to resolve, questions of admissibility are properly resolved by the court. The resolution of evidentiary questions on summary judgment conserves the resources of the parties, the court, and the jury.

Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (alteration in original) (internal citations omitted). In other words, "[t]he court performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment." Id. at 66. Thus, if the expert testimony is excluded as inadmissible under the Rule 702 framework articulated in Daubert and its progeny, the summary judgment determination is made by the district court on a record that does not contain that evidence. Id. at 66-67. Such an analysis must be conducted even if precluding the expert testimony would be outcome determinative. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142-43 (1997). Accordingly, pursuant to Rule 104 of the Federal Rules of Evidence, the court must examine the admissibility of Plaintiff's expert testimony in ruling on Defendant's motion for summary judgment.

The admissibility of expert testimony is analyzed under Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of the expert testimony bears the burden of establishing the admissibility of such testimony under the Daubert framework by a preponderance-of-the-evidence standard. See Daubert, 509 U.S. at 592 n.10 ("These matters should be established by a preponderance of proof." (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987))); see also Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir.2010) ("[T]he party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." (citations and quotation marks omitted)); accord Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003); Fed. R. Evid. 702 advisory committee's note ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a)). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

"The district court is the ultimate 'gatekeeper,'" United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007), and "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," Daubert, 509 U.S. at 589; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999) (holding that whether the witness's area of expertise is

14

technical, scientific, or more generally "experience-based," the district court, in its "gatekeeping" function, must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

Thus, under Rule 702, the district court must make several determinations before allowing expert testimony: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact. See Nimely, 414 F.3d at 396-97.

With respect to reliability, "the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." Williams, 506 F.3d at 160 (internal citation and quotation marks omitted). As the Second Circuit has explained, the Supreme Court "has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) (internal citations and quotation marks omitted); accord Nimely, 414 F.3d at 396. These criteria are designed to be instructive, but do not constitute a definitive test in every case. See Kumho, 526 U.S. at 151; Nimely, 414 F.3d at 396. Moreover, in addition to these criteria for determining whether the methodology is reliable, Rule 702 also

requires that there be a sufficiently reliable connection between the methodology and the expert's conclusions for such conclusions to be admissible. See Gen. Elec. Co., 522 U.S. at 146 ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); see also Amorgianos, 303 F.3d at 266 ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

        *b.*    *Discussion*

Defendant urges the court to disregard the McCaffrey declaration because McCaffrey "failed to disclose any information about the process or methodology used to conduct the 'audit' of the website, and is therefore unreliable." (Def. Opp'n at 5.) Defendant contends that McCaffrey failed to disclose any information concerning "what the audits entailed, how they were performed, what the audits were designed to accomplish, what standards were used to conduct the audits, or whether the method by which he performed the audits is accepted within his field." (Def. Reply Mem. in Supp. of Mot. to Dismiss or for Summ. J. ("Def. Reply") at 5.) Plaintiff counters that the November 13, 2017 "Website Compliance Audit" performed by ADASure includes a "Methods and Measurements" section addressing ADASure's "website analysis methodology." (Pl. Reply Mem. in Supp. of Mot. for Summary J. ("Pl. Reply") at 5.)

The court agrees with Defendant that McCaffrey's declaration is insufficiently reliable. As an initial matter, McCaffrey provides no details about his own role in the audits conducted by ADASure, beyond his statements that he is the founder of ADASure and that "ADASure team members and [he] audited" various aspects of the website. (See McCaffrey Decl. ¶¶ 1, 9-12.)

The audits also lack detailed explanations of methodology and process. The "Methods and Measurements" section of the November 13, 2017 report identified by Plaintiff in his reply brief is cursory at best. For example, step 1, "Manual Review" is described as: "developers manually review the website code to find errors as they relate to WCAG 2.0 Level A and Level AA." In Step 2, Quality Assurance, "testers use automated technology to verify issues found in step 1 as well as check for new issues." (McCaffrey Decl. Ex. G at 2.) These high-level descriptions of the audit process are insufficient to demonstrate the reliability of McCaffrey and the ADASure audits. The screen recording videos attached to the audit report, which show a user navigating the Website and thus purport to "show the process of conducting the audit of the website" (Pl. Reply at 5), are not a sufficient replacement for a proper explanation of overall methodology and process. Additionally, the court notes that the September 2, 2017, September 3, 2017, and November 10, 2017 audits contain no such methodology sections. McCaffrey also does not indicate whether the methods and measurements employed in any of the audits are widely accepted or standard in the field. The court thus finds that the Plaintiff has failed to meet his burden in proving that McCaffrey's opinions are sufficiently reliable under Rule 702 and Daubert. The court thus declines to consider the McCaffrey declaration and appended audit reports.

2. Plaintiff's Declarations

Leaving aside the McCaffrey declaration, the court considers whether the record indicates that "there is no genuine dispute as to any material fact and [Plaintiff] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Raskin, 125 F.3d at 66-67 (explaining that if expert testimony is excluded as inadmissible, the summary judgment determination is made by the district court on a record that does not contain that evidence).

In his own declarations, signed in December 2017 and January 2018, Plaintiff avers that the Website still contains barriers to his equal access, including that he cannot access the search button on the homepage or complete a purchase. (See Jan. 2018 Diaz Decl.; Dec. 2017 Diaz Decl.)

Defendant counters with declarations from Rebecca Andrysiak, Defendant's Director of Marketing Communications and Ecommerce, who oversaw the upgrade of the Website. (See Andrysiak Decl. ¶ 6; Andrysiak Reply Decl.) These declarations also date from December 2017 and January 2018. (See Andrysiak Decl. ¶ 6; Andrysiak Reply Decl.) In them, Andrysiak describes Defendant's efforts to ensure that the Website conforms with WCAG accessibility guidelines and avers that, "to the best of [her] knowledge . . . the website is in conformance with the Web Content Accessibility Guidelines 2.0, Level AA standard." (Andrysiak Decl. ¶ 6.) Notably, Andrysiak states that Defendant has retained a vendor to run regular scans of the website and intends to remedy any identified errors to ensure continued compliance with these accessibility guidelines going forward, implying that errors identified by Plaintiff may have since been remedied. (See id. ¶ 10.) Andrysiak also calls into question the materiality of the errors identified in Plaintiff's declarations. For example, she states that although a visually impaired user may not be able to access the search icon on the homepage, he or she can nonetheless navigate through the Website using a keyboard.[6] (Andrysiak Reply Decl. ¶ 4.) Whether such a barrier impedes the full and equal enjoyment of the Website such that it rises to the level of an ADA violation is a disputed question of fact not appropriate for resolution by the court at this time.

---

[6] Although Andrysiak's reply declaration is addressed to the errors identified in the ADASure audit, it applies to Plaintiff's declarations to the extent that he identifies similar or the same errors.

The declarations submitted by the parties thus demonstrate that genuine issues of material fact exist as to whether the upgraded website—which is apparently being regularly reviewed and tweaked to address accessibility concerns—currently contains barriers to access that rise to the level of an ADA violation. Because there is a triable issue as to whether the Website violates the ADA, summary judgment would be inappropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and/or for summary judgment and Plaintiff's motion for summary judgment are DENIED

SO ORDERED.

Dated: Brooklyn, New York
July 27, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge